IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PHILLIP DANIEL PETERSON | NO: 3:24-CR-507-N |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Edward L. Hocter*
EDWARD L. HOCTER
Assistant United States Attorney
Texas Bar No. 24121668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: 214-659-8600
Fax: 214-659-8805
Email: Ted.Hocter@usdoj.gov

# Table of Contents


Table of Contents ........ i

Table of Authorities ........ ii

Argument and Authorities ........ 2

1. Legal Standard ........ 2

   A. A motion to dismiss tests the sufficiency of the indictment, not the evidence. ........ 2

   B. The elements of § 875(c) are straightforward: interstate transmission and a true threat. ........ 3

2. The indictment is facially valid. ........ 4

3. The defendant's statements constitute classic "true threats." ........ 6

   A. The language is explicit and violent. ........ 6

   B. The context reinforces, rather than undermines, their threatening nature." ........ 7

   C. The objective standard leaves no doubt. ........ 9

   D. The sexual and stalking threats heighten the gravity. ........ 10

   E. Defendant's subjective intent is a jury question. ........ 12

4. *United States v. Bullard* and *United States v. Bayne* support, not undermine, the government's position here. ........ 13

5. Political and popular usage of similar phrases is inapposite. ........ 13

6. Local prosecutorial discretion has no bearing on the indictment. ........ 15

Conclusion ........ 15

# Table of Authorities

**Page(s)**

**Cases**

*Bailey v. Iles*,
87 F.4th 275 (5th Cir. 2023) .......... 14

*Counterman v. Colorado*,
600 U.S. 66 (2023) .......... passim

*Elonis v. United States*,
575 U.S. 723 (2015) .......... 3, 14

*Hamling v. United States*,
418 U.S. 87 (1974) .......... 2

*United States v. Batchelder*,
442 U.S. 114 (1979) .......... 15

*United States v. Bayne*,
No. 2:24-cr-240, 2024 WL 4931797 (D. Utah Dec. 2, 2024) .......... 13

*United States v. Bullard*,
No. 2:25-cr-5, 2025 WL 991049 (E.D. Va. Apr. 2, 2025) .......... 13

*United States v. Daughenbaugh*,
49 F.3d 171 (5th Cir. 1995) .......... 15

*United States v. Dennis*,
132 F.4th 214 (2d Cir. 2025) .......... 8

*United States v. Flores*,
404 F.3d 320 (5th Cir. 2005) .......... 2

*United States v. Goltz*,
2024 WL 3355355 (5th Cir. July 10, 2024) (unpublished) .......... 15

*United States v. Gordon*,
780 F.2d 1165 (5th Cir. 1986) .......... 5

*United States v. Jubert*,
139 F.4th 484 (5th Cir. 2025) .......... passim

*United States v. Kay*,
359 F.3d 738 (5th Cir. 2004) .......... 2, 5, 12

*United States v. Knight*,
2024 WL 909589 (5th Cir. Mar. 4, 2024) (unpublished) .......... 4

*United States v. Mann*,
517 F.2d 259 (5th Cir. 1975) .......... 2, 5

United States v. Morales,
272 F.3d 284 (5th Cir. 2001) .......... 3, 8, 12

*United States v. Nevarez*,
No. 2:24-CR-9-Z, 2024 WL 3463095 (N.D. Tex. July 17, 2024) .......... 2

*United States v. Uhlenbrock*,
125 F.4th 217 (5th Cir. 2024) .......... 11

*Watts v. United States*,
394 U.S. 705 (1969) .......... 14

**Statutes**

18 U.S.C. § 875(c) .......... 1, 2, 3, 11

18 U.S.C. § 2261A(2)(B) .......... 10

**Rules**

FED. R. CRIM. P. 7(c)(1) .......... 4

**Other Authorities**

Brief of Appellant, *United States v. Jubert*, No. 24-60199, 2024 WL 4468048 (5th Cir. June 4, 2024) (unpublished) .......... 14

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Defendant Phillip Daniel Peterson stands charged with eight counts of transmitting interstate threats in violation of 18 U.S.C. § 875(c). Dkt. 1. The indictment alleges that defendant knowingly transmitted explicit threats of sexual assault, physical violence, and death against named individuals in interstate commerce via e-mail. *Id.* Now, defendant moves to dismiss the indictment, contending that his statements were "rhetorical hyperbole" expressed in the course of acrimonious litigation and reflect "coarse and aggressive language" that he learned in the "M&A investment banking world." Dkt. 27. That motion fails.

The indictment tracks the statutory language of 18 U.S.C. § 875(c), alleges the requisite mens rea, and provides defendant with notice sufficient to prepare his defense. The Supreme Court has made clear that the First Amendment does not protect "true threats." *Counterman v. Colorado*, 600 U.S. 66, 73-74 (2023). And the statements at issue—threats to "put [a victim's] head on a stick," to "fuck [a victim] up," and to "ass fuck" multiple named individuals—fall squarely within that category. Defendant's arguments amount to factual defenses about interpretation and context, which must be resolved by a jury, not through pretrial motion.

## Argument and Authorities

### 1. Legal Standard

#### A. A motion to dismiss tests the sufficiency of the indictment, not the evidence.

"As a motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment, the Court must take the allegations of the indictment as true and must determine whether an offense has been stated." *United States v. Nevarez*, No. 2:24-CR-9-Z, 2024 WL 3463095, at *1 (N.D. Tex. July 17, 2024) (quoting *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004) (internal quotations omitted)). An indictment is sufficient if it (1) sets out the elements of the offense charged, (2) fairly informs the defendant of the charges, and (3) enables him to plead double jeopardy in future prosecutions. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Although Rule 12 motions may resolve "a question of law presented in a case involving undisputed facts," *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005) (abrogated on other ground in *United States v. Garcia*, 707 Fed.Appx 231 (5th Cir. 2017)), defendant's motion is based on a factual dispute—i.e., whether a jury could reasonably determine that his communications were threats sufficient to support a conviction under 18 U.S.C. § 875(c). Questions of factual sufficiency are not addressed properly in a motion to dismiss but, rather, are issues for the jury. *See, e.g.*, *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975) ("A defendant may not properly challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by

adequate evidence, for an indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits.”).

### B. The elements of § 875(c) are straightforward: interstate transmission and a true threat.

To prove a violation of 18 U.S.C. § 875(c), the government must establish that: (1) the defendant knowingly sent a message containing a threat to injure the person of another; (2) the defendant sent a “true threat”—i.e., a message with the intent to communicate a threat, or with a conscious disregard (recklessness) that the communication would be viewed as a threat; and (3) the communication was sent in interstate or foreign commerce. *See* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 2.39 & Notes (2024) (explaining that § 875(c) requires interstate transmission plus a true threat and now a subjective mens rea of at least recklessness).

The definition of a “true threat” has evolved. In *United States v. Morales*, the Fifth Circuit held that a statement qualifies if a reasonable person would perceive it, in context, as a serious expression of intent to inflict harm, without requiring proof that the defendant subjectively recognized its threatening character. 272 F.3d 284, 287-89 (5th Cir. 2001). The Supreme Court later refined this standard. In *Elonis v. United States*, the Court rejected a negligence-only approach to § 875(c), holding that the statute requires some showing of subjective culpability regarding the threatening nature of the communication. 575 U.S. 723, 741 (2015). The Court confirmed the constitutional minimum in *Counterman v. Colorado*, explaining that the First Amendment requires

proof that the defendant was at least reckless—that is, that he consciously disregarded a substantial risk that his words would be understood as threats. 600 U.S. at 73, 82.

Most recently, the Fifth Circuit formalized this standard in *United States v. Jubert*, adopting a two-part test: the government must show both that (1) an objectively reasonable person would view the statement, in context, as a serious expression of intent to cause harm, and (2) that the defendant made the statement with intent to communicate a threat, or with a conscious disregard that the statement would be viewed as a threat. 139 F.4th 484, 491 (5th Cir. 2025). In other words, prosecutions require both an objective showing and proof of the defendant's conscious disregard of the threatening nature of the communication. *Id.*

Although *Counterman* and *Jubert* did not arise under § 875(c), their reasoning governs here. Both cases interpret and define the constitutional limits of prosecuting "true threats." Because 875(c) prosecutes the same category of speech—interstate communications containing threats—this framework necessarily applies. *See United States v. Knight*, No. 23-30569, 2024 WL 909589, at *1 (5th Cir. Mar. 4, 2024) (unpublished) (acknowledging that, under *Counterman*, recklessness is the constitutionally required mens rea in true-threat prosecutions, including those under § 875(c)).

**2. The indictment is facially valid.**

Here, the indictment tracks the statutory language of § 875(c) and alleges the requisite mens rea under *Counterman* and *Jubert*, thus it is more than adequate under FED. R. CRIM. P. 7(c)(1). The Fifth Circuit has emphasized repeatedly that an indictment

is sufficient where it "contain[s] the elements of the offense charged and fairly inform[s] a defendant of the charge against which he must defend and enable[s] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Kay*, 359 F.3d at 742.

Here, each count of the indictment alleges that defendant knowingly transmitted in interstate and foreign commerce a communication threatening to injure named individuals. Dkt. 1. Each count specifies the content, recipients, and dates of each threat. *Id.* That language, by itself, recites all of the essential elements required by § 875(c). The indictment further alleges that the defendant acted at least with a conscious disregard that each communication would be viewed as a threat—the very mens rea required by *Counterman* and *Jubert*.

Because the indictment alleges the elements, as clarified by binding precedent, it defeats defendant's argument that dismissal is required. Defendant's contention that his words amounted only to "crude and inappropriate" "hyperbole" is, at most, a factual defense that the jury will weigh at trial. (Dkt. 27 at 4); *Mann*, 517 F.2d at 267 (holding that mens rea is an evidentiary question for trial, not to be determined on a motion to dismiss the indictment). His argument does not establish that the indictment fails to state an offense. As the Fifth Circuit has explained, an indictment need not allege "the evidentiary details establishing the facts of such offense." *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986). By tracking the statutory text and alleging the proper mens rea, the indictment is sufficient to withstand a Rule 12(b)(3)(B)(v) challenge.

**3. The defendant's statements constitute classic "true threats."**

While the Court need go no further, the charged statements in this case are quintessential examples of "true threats." The communications set out in the indictment are not abstract musings, political slogans, or ambiguous metaphors. Instead, they are graphic threats of sexual assault, physical violence, and even decapitation, directed at specific, named individuals in the middle of a heated dispute.

**A. The language is explicit and violent.**

The indictment charges the defendant with sending eight e-mails containing the following statements:

- "I am going to ass fuck M.M. FUCK THIS CUNT."
- "M.M., I am going to fuck you up."
- "I am going to put your fucking head on a stick."
- "I am going to ass fuck you M.M. you fucking cunt."
- M.M. I am going to fuck you in the ass you stupid cunt."
- "M.M. I am going to ass fuck for the end of time."
- "I am going to fuck both J.H. and D.W. in the ass."
- "You stupid faggots better know I know where you live."

The language that the defendant use conveys direct, unambiguous threats of rape, physical assault, and death.

As set out above, a statement constitutes a true threat when two conditions are met: (1) an objectively reasonable person would view it, in context, as a serious expression of intent to cause harm, and (2) that the defendant sent the message with intent

to communicate a threat, or with a conscious disregard that the communication would be viewed as a threat. *Jubert*, 139 F.4th at 490-91 (applying *Counterman*). The Supreme Court has described true threats as "serious expressions conveying that a speaker means to commit an act of unlawful violence." *Counterman*, 600 U.S. at 74.

By any measure, defendant's statements fit squarely within that category of speech. His messages were explicit, graphic, and directed at identified adversaries, leaving no room for misunderstanding. The fact that he sent multiple, escalating communications to opposing counsel and executives in the middle of active litigation demonstrates that he was at least reckless as to their threatening nature. A reasonable speaker in his position could not fail to recognize that repeated statements about rape, mutilation, and death—paired with "I know where you live"—would be taken as threats. The direct targeting, the context of a legal dispute, and the unambiguous language together show that defendant consciously disregarded the substantial risk that his words would be received as menacing. These statements thus easily clear the bar set by *Counterman* and *Jubert*.

### B. The context reinforces, rather than undermines, their threatening nature."

Defendant argues that his statements were "hyperbolic and rhetorical" and expressed in the course of acrimonious litigation. Dkt. 27 at 5. But context cuts the other way. Courts consistently hold that threats directed at litigation adversaries, judges, or attorneys fall within the scope of federal threats statutes.

In *United States v. Dennis*, for example, the defendant, himself a lawyer, sent hundreds of hostile electronic messages to his former law partners during a bitter professional dispute. 132 F.4th 214, 225 (2d Cir. 2025). The Second Circuit held that, even in the context of disputes between high-powered attorneys, communications that convey threats to injure fall within the category of unprotected "true threats." *Id.* at 230, 232. The professional status of the recipients and the adversarial nature of the dispute did not strip the statements of their threatening character; if anything, the context heightened their coercive potential. *Id.* at 230-32.

The same reasoning applies here. Defendant's messages—explicit threats to sexually assault, maim, and kill named opposing attorneys and executives—are, if anything, more direct and violent than the communications sustained in *Dennis*. *Id.* (discussing veiled nature of threats in Dennis's communications). That the messages here were sent in the course of litigation is no defense. *Dennis* makes clear that threats to injure, even among lawyers locked in professional conflict, violate federal law. *Id.*

The Fifth Circuit has embraced the same principle in a different setting. In *United States v. Morales*, the court upheld a conviction for threatening to carry out a school shooting, rejecting the defendant's claim that his words were merely a joke or rhetorical hyperbole. 272 F.3d at 287-88. Although *Morales* applied the then-prevailing objective-only test, its analysis remains instructive: the court emphasized that threats must be evaluated in context, considering both the words used and how they would reasonably be understood in light of the surrounding circumstances. *Id.* That reasoning continues to

guide the objective prong of the true-threat inquiry even under the refined standard established by *Elonis*, *Counterman*, and *Jubert*.

So, too, here. Defendant's graphic threats to rape, maim, and kill named attorneys and executives during pending litigation are, if anything, more direct and menacing than the communications in *Dennis* or *Morales*. That they were made in the course of litigation does not strip them of their threatening character. To the contrary, as *Dennis*, *Morales*, and *Jubert* make clear, context often amplifies the threatening effect of a statement. Defendant's threats therefore fall within the ambit of § 875(c).

### C. The objective standard leaves no doubt.

Defendant's threats easily satisfy the objective standard that governs prosecutions under § 875(c). In *United States v. Jubert*, the Fifth Circuit, citing *Counterman*, held that prosecutions under threat statutes like § 875(c) employ a two-prong standard: the government must prove (1) that an objectively reasonable person would perceive the communication, in its context, as a serious expression of intent to inflict harm, and (2) that the defendant sent the message with intent to communicate a threat, or with a conscious disregard that the communication would be viewed as a threat. *Jubert*, 139 F.4th at 490-91.

Measured against this standard, defendant's conduct leaves no room for doubt. The statements were not conditional, vague, or metaphors. They were blunt promises of violence—"I am going to put your fucking head on a stick" and "You stupid faggots better know I know where you live"—delivered directly to their targets. An objectively

reasonable person in defendant's position would recognize that these statements would be understood as threats of rape, assault, and murder.

Under *Counterman*'s objective framework, therefore, defendant's claims of hyperbole, litigation frustration, or coarse and aggressive language" learned in the "M&A investment banking world" provide no shelter. A reasonable speaker in his position would foresee—indeed, could not avoid foreseeing—that these messages would be received as true threats.

**D. The sexual and stalking threats heighten the gravity.**

The communications charged in the indictment do not threaten simple injury, several are sexualized ("I am going to ass-fuck you . . . you stupid cunt") and one adds stalking-type menace ("I know where you live"). Dkt. 1. Fifth Circuit cases confirm that specificity, persistence, and intrusion into a victim's private sphere heighten the threatening character of online communications.

Start with the Fifth Circuit's recent true-threats analysis in *Jubert*: the court upheld 18 U.S.C. § 2261A(2)(B) against a First Amendment attack similar to the defendant's where Jubert's sustained, targeted campaign escalated from insults to explicit threats, referenced the victim's children, and tracked their movements—facts the panel treated as *aggravating*, not exculpatory. *Jubert*, 139 F.4th at 492. The Court emphasized that posts calling for the victim's "execution," warning "I can't wait to . . . f*** you up," and "None of this will stop until the casket drops" crossed the line to true threats, especially when coupled with tracking/location details. *Id.* at 491. Those factors made the communications more coercive and terrifying in context. Because the First Amendment

governs "true threats" uniformly across statutes, the same analysis that sustains § 2261A prosecutions applies with equal force to § 875(c).

Likewise, the Fifth Circuit has recognized that electronic campaigns of sexualized humiliation inflict grave harms, like fear and humiliation. *United States v. Uhlenbrock*, 125 F.4th 217, 225 (5th Cir. 2024), *cert. denied* ___ S. Ct. ___, 2025 WL 1787758 (June 30, 2025). In *Uhlenbrock*, the Court affirmed a § 2261A(2)(B) conviction where the defendant published intimate images and sexually graphic narratives under the victim's name, identifying her employer and inviting men to approach her, noting the powerful, predictable fear and substantial emotional distress that followed. *Id.* Although *Uhlenbrock* did not involve explicit threats to injure, it underscores that sexualized online conduct intensifies the menace and impact of related communications. *Id.* Pairing those features with overt threats of rape and decapitation imagery, as here, places defendant's messages at the core of unprotected threat speech.

The Fifth Circuit has also made clear that a threat can exist when the speaker places the target where they are likely to be and describes harm in a way a reasonable person would take seriously—logic that applies with even greater force when the speaker names individual victims and says he knows where they live, as defendant did here. *See Jubert*, 139 F.4th at 484 (reasoning that defendant's references to tracking a victim's physical location implied they were true threats).

### E. Defendant's subjective intent is a jury question.

At this stage, the government need only plead the elements; disputes about whether defendant "meant to threaten physical violence" are for the jury under the Fifth Circuit's threat jurisprudence. (Dkt. 27 at 5); *Kay*, 359 F.3d at 742.

Returning to *Morales*, the Fifth Circuit affirmed a § 875(c) conviction over the defendant's claim he was "only joking," emphasizing that it is for the jury to decide whether the statements were made and whether they constituted a true threat. 272 F.3d at 286–88. At the time, the Court applied an objective-only standard, but its analysis remains instructive: it reviewed the surrounding circumstances and the recipient's reaction and held that a reasonable juror could find the elements met. *Id.* at 288. While *Counterman* and *Jubert* have since clarified that the First Amendment also requires proof that a defendant was at least reckless as to the threatening nature of his words, *Morales* illustrates the continuing principle that context and audience response are central to determining whether words cross the line into true threats—precisely the posture here.

More recently, the Fifth Circuit articulated the aforementioned two-part framework that governs after *Counterman*: the communication must be objectively threatening and the speaker must have intended its threatening nature or, at least, had a conscious disregard (recklessness) that it would be viewed as a threat. *Jubert*, 139 F.4th at 491. Whether that standard is satisfied is a fact-intensive inquiry that turns on the words used and the surrounding context—again, a task for the jury, not a Rule 12 dismissal.

Finally, to the extent defendant argues some recipients did not feel threatened, Fifth Circuit law looks to what the statements objectively conveyed in context; one recipient's minimization doesn't defeat a charge where the communications themselves—graphic promises of sexual assault and violence, coupled with "I know where you live"—would foreseeably be understood as threats. *Id.* (citing *Counterman*, 600 U.S. at 72-73).

**4. *United States v. Bullard* and *United States v. Bayne* support, not undermine, the government's position here.**

Defendant's reliance on *United States v. Bullard*, No. 2:25-cr-5, 2025 WL 991049 (E.D. Va. Apr. 2, 2025), and *United States v. Bayne*, No. 2:24-cr-240, 2024 WL 4931797 (D. Utah Dec. 2, 2024), is misplaced. In both cases, courts upheld § 875(c) indictments. The fact that defendant's threats were sexualized and graphically violent makes them, if anything, more serious than the threats in those cases. Nevertheless, neither out-of-district case is binding on this court.

**5. Political and popular usage of similar phrases is inapposite.**

Defendant points to statements by public figures such as Jim Comey, Adam Schiff, and Amy Poehler's character in *Parks and Recreation*, as well as fictional depictions of "heads on pikes" in shows like *Game of Thrones* and *The Walking Dead*, to argue that his own communications should be dismissed as rhetorical flourish. Dkt. 27. These analogies mirror the failed defenses rejected by the Fifth Circuit in *Jubert*, 139 F.4th at 491, and fail for three reasons.

First, context controls. The Supreme Court has emphasized that whether words constitute a true threat depends on how they would be reasonably understood in context. *Counterman*, 600 U.S. at 74-75; *Elonis*, 575 U.S. at 737-38. The examples defendant cites arose in public political debates (Comey, Schiff), comedy or satire (*Parks and Recreation*), or fictional entertainment (*Game of Thrones*, *The Walking Dead*). By contrast, defendant's statements were private, targeted, and directed at named individuals in the midst of contentious litigation: "I am going to put your fucking head on a stick" and "I know where you live." A reasonable speaker in defendant's position would foresee these words being taken as literal threats, not as satire or artistic metaphor.

Second, audience reaction distinguishes casual or cultural references from true threats. In *Jubert*, the defendant urged that his posts were merely "objectionable and in poor taste," likening them to the political hyperbole in *Watts v. United States* or the satirical pop-culture references in *Bailey v. Ives*. Brief of Appellant, *United States v. Jubert*, No. 24-60199, 2024 WL 4468048, at 24 (5th Cir. June 4, 2024) (unpublished) (citing *Watts v. United States*, 394 U.S. 705 (1969); *Bailey v. Iles*, 87 F.4th 275 (5th Cir. 2023). The Fifth Circuit rejected that analogy, explaining that unlike in *Watts*, Jubert's statements were not offhand remarks at a political rally, and unlike in *Bailey*, they were not cloaked in humor or dismissed by their audience. *Jubert*, 139 F.4th at 491-92. Instead, his posts named specific victims, referenced their children, and tracked their whereabouts—features that placed them firmly within the realm of true threats. *Id.* Here, as in *Jubert*, he targets of defendant's communications—his litigation adversaries—had every reason to take the threats at face value.

Third, the Fifth Circuit has distinguished *Watts* repeatedly, holding that hyperbolic language in political or cultural discourse cannot excuse targeted threats. *See, e.g.*, *United States v. Daughenbaugh*, 49 F.3d 171, 174 (5th Cir. 1995); *United States v. Goltz*, No. 23-10851, 2024 WL 3355355, at *2 (5th Cir. July 10, 2024) (unpublished).

In short, pop-culture and political references do not grant defendant a license to terrorize his litigation adversaries. Whatever their place in satire, television, or politics, the law draws a sharp line at private, graphic, and targeted threats of violence. Defendant crossed that line, and his analogies cannot erase the plain meaning of his words.

**6. Local prosecutorial discretion has no bearing on the indictment.**

Defendant argues that Dallas Police elected not to pursue charges against him after they became aware of the content of the statements. Dkt. 27 at 10. That Dallas County did not charge defendant is immaterial. Federal and state authorities exercise independent discretion. *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979).

## Conclusion

Defendant's motion to dismiss (Dkt. 27) should be denied. The indictment is facially valid because it tracks the statutory language of § 875(c) and alleges the requisite mens rea under *Elonis* and *Counterman*. Defendant's communications—graphic threats of sexual assault, mutilation, and death—are the very definition of true threats, and Fifth Circuit precedent forecloses any effort to repackage them as political rhetoric, litigation hyperbole, or pop-culture parody. Whether defendant subjectively intended to threaten is a quintessential jury question, not a matter for dismissal at the pleadings stage.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Edward L. Hocter*

EDWARD L. HOCTER
Assistant United States Attorney
Texas Bar No. 24121668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: 214-659-8600
Fax: 214-659-8805
Email: Ted.Hocter@usdoj.gov