IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PHILLIP DANIEL DEFENDANT | No. 3:24-CR-507-N |

**GOVERNMENT'S MOTION FOR RECONSIDERATION OF**
**RULINGS ON MOTIONS IN LIMINE III, IV, AND V**

The Government asks the Court to reconsider limited portions of its rulings on Government's Motions in Limine III, IV, and V. (Dkt. 57). The evidence addressed by those motions does not involve peripheral trial details. Rather, the defense seeks to use Defendant's alcohol history to negate the required mental state and invite sympathy for Defendant's alcohol problem. It seeks to use a collateral State Bar proceeding to suggest that another tribunal has already resolved Defendant's conduct favorably to Defendant. And it seeks to introduce Defendant's later apology as evidence of his subjective intent at the time he sent the charged threats. Each theory risks placing inadmissible or misleading evidence before the jury before the Court can address its proper use.

The rulings also create significant trial-management problems. As presently framed, they will require multiple hearings under Fed. R. Evid. 104 outside the jury's presence. The State Bar issue will also require the Government to identify, subpoena, and prepare an additional witness from the State Bar's Office of Chief Disciplinary Counsel. The Government will then need to litigate the scope of that testimony. Those issues could extend a trial expected to last two days by another day or more. The

Government asks the Court to resolve them before trial and, if necessary, set another pretrial conference.

**I. Evidence of Defendant's alcohol use should be excluded because it supports an improper intoxication defense and invites jury nullification.**

The Court deferred ruling on Motion in Limine III regarding Defendant's alcohol use until the witnesses testify. The Government asks the Court to exclude evidence or argument concerning Defendant's alcohol use or intoxication prior to trial because the defense seeks to use that evidence for two improper purposes.

First, the defense seeks to argue that alcohol prevented Defendant from possessing the subjective mental state required for the charged threats. Defendant sent eight charged communications over several hours on June 23, 2023. (Dkt. 1). The primary question for the jury is Defendant's mental state when he transmitted each communication. *See Elonis v. United States*, 575 U.S. 723, 737-40 (2015); *Counterman v. Colorado*, 600 U.S. 66, 69, 79 (2023). *Counterman* requires subjective awareness of the threatening character of the communication, with recklessness as the constitutional minimum. 600 U.S. at 69, 79. All eight counts in the indictment charge Defendant with a mens rea of recklessness. (Dkt. 1).

It is well settled in the Fifth Circuit that voluntary intoxication does not negate a mens rea of recklessness. *See United States v. Adams*, 275 F. App'x 298, 300 (5th Cir. 2008) (quoting *United States v. Molina-Uribe*, 853 F.2d 1193, 1205 (5th Cir. 1988), overruled on other grounds by *United States v. Bachynsky*, 934 F.2d 1349 (5th Cir. 1991)). Thus, the defense should not be permitted to convert Defendant's voluntary

intoxication into an improper defense to the charged recklessness standard. Evidence that Defendant was drunk, drank heavily, or suffered from an alcohol problem does not make the existence of the charged mental state more or less probable. Consequently, it is irrelevant under Fed. R. Evid. 401 and inadmissible under Fed. R. Evid. 402. Any marginal probative value is substantially outweighed by the risk of confusing the issues, misleading the jury, and inviting an improper intoxication defense. *See* Fed. R. Evid. 403.

Second, the defense seeks to use Defendant's alcohol problem to invite jury nullification. Irrelevant evidence that Defendant struggled with alcohol invites the jury to disregard the law and excuse conduct that otherwise satisfies the elements of § 875(c). The question at hand is whether the Government proved those elements beyond a reasonable doubt. It is not whether Defendant's alcohol problem gives the jury a reason to forgive the conduct. Evidence offered for that purpose is irrelevant and creates a substantial risk of unfair prejudice and confusion. *See* Fed. R. Evid. 401-03.

The defense also lacks a proper factual foundation for generalized intoxication evidence. Evidence that Defendant drank at other times does not establish his condition when he sent a charged communication. Nor does a witness's inference from the tone of an email establish intoxication. A witness who did not see Defendant drink, speak with him, or otherwise observe his condition when he sent the emails lacks personal knowledge of whether he was intoxicated that night.

One email chain in this case contains a reply telling Defendant, in effect, to stop drinking and knock it off. The Government offers the complete exchange as context for Defendant's contemporaneous statements. It does not offer the reply to prove that

Defendant was drinking at the time. The presence of that statement does not open the door to Defendant's alcohol history or establish intoxication at the time of the charged threats. If necessary, the Court can instruct the jury that the reply is not admitted to prove that Defendant consumed alcohol.

The Court should resolve this issue before the jury hears the evidence. Once the jury hears that Defendant was an alcoholic or was intoxicated, the defense has gained the benefit of the inference it seeks. A later ruling striking the testimony cannot reliably remove it.

Alternatively, the Court should conduct a Rule 104 hearing before the defense questions any witness on that subject. Rule 602 requires personal knowledge. Rule 701 requires a lay opinion to rest on the witness's perception. Fed. R. Evid. 602, 701(a). The Fifth Circuit permits voir dire outside the jury's presence to test that foundation. *United States v. Davis*, 792 F.2d 1299, 1303-04 (5th Cir. 1986). The defense should establish what each witness personally observed, when the observation occurred, and whether the witness interacted with Defendant during the relevant period. The Court can then determine whether any admissible evidence remains after separating personal knowledge from speculation and improper argument.

## II. State Bar impeachment evidence should be excluded because it invites the jury to rely on a collateral proceeding.

The Court excluded the result of the State Bar proceeding but allowed the defense to question M.M. about purported sworn testimony from that proceeding. The proposed impeachment instead rests on contemporaneous notes that were allegedly prepared by

Defendant and attorneys that Defendant retained in that proceeding. The Government asks the Court to reconsider that ruling.

The problem extends beyond ordinary impeachment. The defense seeks to place the State Bar proceeding before the jury to create the inference that another tribunal already considered Defendant's conduct and resolved the matter. From there, the defense can invite the jury to ask why it should convict Defendant for conduct that another body supposedly already examined. That is a nullification argument dressed as impeachment.

Despite defense counsel's representations during today's pretrial conference, the State Bar has no authority to determine whether Defendant violated 18 U.S.C. § 875(c) during a disciplinary proceeding. It cannot apply the elements governing the charged offenses. It cannot decide whether Defendant transmitted a true threat with the mental state required by federal law. And it cannot answer the questions this jury must decide beyond a reasonable doubt. Whatever occurred in that collateral proceeding cannot substitute for the jury's application of this Court's instructions to the evidence admitted at this trial.

Excluding the formal result does not eliminate that danger. Once the defense tells the jury that M.M. testified under oath in a disciplinary proceeding and suggests that her testimony differed, the jury will naturally wonder why the proceeding occurred and how it ended. The defense can obtain the benefit of the implied collateral resolution without placing the actual framework of that proceeding before the jury. That creates a substantial risk of confusion and invites the jury to decide this case based on what another body supposedly did. *See* FED. R. EVID. 403.

The proposed impeachment also has a separate reliability problem. Rule 613 does not always require a transcript before a witness may be questioned about a prior statement. *See Great W. Cas. Co. v. Rodriguez-Salas*, 436 F. App'x 321, 325 (5th Cir. 2011). But the defense still needs a reliable basis to attribute a statement to M.M. The Fifth Circuit has cautioned against treating ordinary notes as a verbatim record. *See United States v. Leach*, 613 F.2d 1295, 1304-05 (5th Cir. 1980) ("Unless one has stenographic or similar skills and a reason to use them, he will not transcribe every word of a conversation in which he is participating").

The reliability concern with notes is even more acute here. These are not notes prepared by a neutral observer or official reporter. Defendant and attorneys retained to represent Defendant prepared them during an adversarial proceeding. The Government does not possess a verbatim record against which the it can test their accuracy, completeness, wording, or context. The notes therefore reflect Defendant's and Defendant's counsel's account of what M.M. supposedly said. They are not M.M.'s testimony. The defense should not be permitted to convert its own litigation notes into M.M.'s sworn testimony.

If the Court permits this line of impeachment, the Government cannot fairly leave the resulting implication unanswered. The Government will need to identify, subpoena, and prepare an appropriate witness from the State Bar's Office of Chief Disciplinary Counsel. That witness will need to explain what the State Bar proceeding did and did not decide, including the nature of the proceeding and the applicable standard. The Government will also need to address how testimony was preserved and whether

participant notes reliably record what a witness said. The result will be a mini-trial concerning a collateral proceeding that did not adjudicate the elements before the jury.

The Government therefore asks the Court to preclude impeachment based on the State Bar proceeding. Alternatively, the Court should conduct a Rule 104 hearing before the defense mentions the proceeding or any purported statement from it before the jury. The defense should identify the precise statement, the alleged inconsistency, the person who recorded it, and the basis for attributing those words to M.M. If the Court permits the impeachment, the Government asks to amend its witness list to call any appropriate witness, including a State Bar witness, in rebuttal.

## III. Evidence of the recipients' reactions does not permit the defense to introduce Defendant's later account of what Defendant meant.

The Court deferred ruling on Motion in Limine V and directed defense counsel to seek permission before raising Defendant's apology e-mail, which occurred after the charged communications were transmitted. The Government asks the Court to clarify that Defendant's later apology and explanations do not become admissible simply because the Government offers evidence of the recipients' reactions to the charged communications.

During the pretrial conference, counsel for Defendant asserted that all communications regarding the litigation are "context," without regard to when they occurred or what they prove. That is too broad. Section 875(c) criminalizes the interstate transmission of a threatening communication. The offense is complete upon transmission with the required mental state. *See United States v. Kammersell*, 7 F. Supp. 2d 1196,

1199 (D. Utah 1998), aff'd, 196 F.3d 1137 (10th Cir. 1999). That does not mean everything that happens afterward is irrelevant, but it does limit the universe of what is relevant. For example, a recipient's reaction can show how the communication was understood in context. *See United States v. Morales*, 272 F.3d 284, 287-88 (5th Cir. 2001); *see also Counterman v. Colorado*, 600 U.S. 66, 72-74 (2023).

The key question for post-threat evidence is what the evidence is offered to prove. The Government intends to offer M.M.'s and J.H.'s reactions as evidence of how a reasonable person, understood the charged threats. M.M. took security precautions after receiving them. J.H. feared for his safety after Defendant told the recipients that Defendant knew where they lived. Those reactions bear on whether the communications would be understood by a reasonable person as true threats. *See id.* They are not offered to prove Defendant's subjective mental state at the time the communications were transmitted.

Defendant's later apology serves an entirely different purpose. The defense seeks to use Defendant's own later statement to tell the jury what Defendant meant at the time he sent the charged threats. That is Defendant's after-the-fact account of Defendant's earlier mental state. If offered for that proposition, the defense offers the statement for its truth.

Rule 801(d)(2)(A) permits the Government to offer Defendant's statements against Defendant. It does not permit Defendant to introduce Defendant's own statements for their truth. *See United States v. Bond*, 87 F.3d 695, 699-700 (5th Cir. 1996). The defense cannot obtain a different result merely because the Government

offers evidence of what the recipients did after receiving the threats to prove an entirely different proposition.

The fact that both categories of evidence arose after transmission does not make them equivalent. Their purposes control. The recipients' reactions show how they understood Defendant's communications. Defendant's apology supplies Defendant's own later account of what Defendant supposedly intended. Admitting the former does not open the door to the latter.

It is important to note that the Government does not concede that Defendant may introduce any of his own pre-threat statements merely by labeling them "context." Defendant's out-of-court statements remain subject to the Rules of Evidence. Rule 801(d)(2)(A) permits the Government to offer Defendant's statements against him; it does not permit Defendant to offer his own statements for their truth. *See Bond*, 87 F.3d at 699-700. Whether a particular pre-threat communication is admissible therefore depends on what the defense offers it to prove and whether an independent evidentiary basis permits its admission.

The Government therefore asks the Court to preserve its requirement that the defense obtain a ruling before mentioning Defendant's statements and clarify that such statements do not become admissible simply because the Government offers post-transmission communications. The defense should identify the specific statement and its evidentiary basis outside the jury's presence. Evidence of the recipients' reactions does not make Defendant's otherwise inadmissible post-offense statements admissible.

## CONCLUSION

The three disputed issues present more than ordinary questions of trial foundation. The defense seeks to use Defendant's alcohol problem to negate recklessness and invite sympathy-based nullification. It seeks to use a collateral State Bar proceeding to imply that another tribunal has already resolved Defendant's conduct and deemed it legal. And it seeks to use Defendant's later apology to place Defendant's own account of Defendant's earlier mental state before the jury. The Court should resolve those issues before the jury hears the disputed evidence.

The Government asks the Court to: (1) exclude evidence, testimony, or argument concerning Defendant's alcohol use or intoxication or, alternatively, require a Rule 104 hearing before any witness is questioned on that subject; (2) exclude any mention of the related State Bar proceeding and preclude impeachment of M.M. based on Defendant's or Defendant's attorneys' notes or, alternatively, resolve the issue in a Rule 104 hearing and permit the Government to call a State Bar rebuttal witness; and (3) require the defense to obtain a ruling outside the jury's presence before introducing Defendant's post-threat apology or other self-serving communications.

If the Court would prefer to address these issues with counsel, the Government requests a further pretrial conference before trial.

Respectfully submitted,

RYAN RAYBOULD
UNITED STATES ATTORNEY

*/s/Edward L. Hocter*
EDWARD L. HOCTER
Assistant United States Attorney
Texas Bar No. 24121668

CAROLINE POORE
Assistant United States Attorney
Tennessee Bar No. 040796

1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone: (214) 659-8600
Facsimile: (214) 659-8808
Emails: ted.hocter@usdoj.gov;
caroline.poore@usdoj.gov

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 23, 2026, I conferred with J. Joseph Mongaras, counsel for the defendant, via telephone. Mr. Mongaras represented that he is opposed to all relief requested.

/s/ *Edward L. Hocter*
EDWARD L. HOCTER
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify on this 23rd day of September 2026 that this document was filed with the Clerk of Court via the court's ECF System.

/s/ *Edward L. Hocter*
EDWARD L. HOCTER
Assistant United States Attorney