**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **No. 3:24-CR-507-N** |
| | § | |
| **PHILLIP DANIEL PETERSON** | § | |

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE FOR A NEW TRIAL UNDER FEDERAL RULES OF CRIMINAL PROCEDURE RULE 29 AND RULE 33**

To the Honorable Judge:

Phillip Peterson, Defendant, hereby moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c), on the grounds that the prosecution failed to introduce sufficient evidence to prove that Peterson committed any offense in the Northern District of Texas and failed to prove he is guilty beyond a reasonable doubt of the charged offenses. Alternatively, Defendant moves this Court for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

**1. Peterson's Motion for Acquittal is Timely and Proper**

After the government's case-in-chief, the defense moved for a Judgment of Acquittal, pursuant to Federal Rule of Criminal Procedure 29(a). This Court subsequently denied the motion. After the defense rested, Peterson renewed his motion for a Judgment of Acquittal, which this Court again denied. Following this Court's charge to the jury, the jury retired for deliberations, and on September 30, 2026, the jury returned a guilty verdict as to Counts 2 through 5, 7, and 8. Accordingly, this motion is timely if filed on or before October 14, 2026. *See* Fed. R. Crim. P. 29(c)(1), 45(a).

Upon Defendant's motion, this Court must enter a judgment of acquittal of any offense for

which the evidence is insufficient to sustain a conviction, even though the jury returned a guilty verdict. Fed. R. Crim. P. 29(c). Should this Court grant this motion, Defendant also requests that this Court conditionally determine whether his Motion for a New Trial should be granted if the Judgment of Acquittal is later vacated or reversed. *See* Fed. R. Crim. P. 29(d)(1).

**2. The Government failed to prove venue was proper in the Northern District of Texas.**

**a. New Supreme Court precedent provides relevant insight into determining proper venue.**

Venue is proper where the crime is committed or, in other words, where the conduct is proscribed by the statute. Peterson was found guilty of six counts of Transmitting a Threatening Communication in Interstate Commerce, in violation of 18 U.S.C. § 875(c). The conduct for this charge is that a defendant knowingly communicated a statement in interstate commerce that contained a "true threat," and that the defendant subjectively intended the communication as a threat.

In a unanimous opinion, the Supreme Court recently considered whether venue was proper where the defendant was charged with knowingly falsifying a document with intent to obstruct a federal investigation. *Abouammo v. United States*, 608 U.S. 597 (2026). The Court found venue proper where the falsification occurred, in the Western District of Washington, rather than where FBI agents discovered from the emailed document's date-and-time metadata that the defendant had falsified the invoice in the Northern District of California. *Id.* at 602. To determine where a crime was committed, the Court stated that lower courts generally must determine the location of the offense's "essential conduct elements." *Id.* (quoting *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999)). A court "must initially identify the conduct constituting the offense"—the things a defendant must do to violate the statute at issue—and then ascertain where those criminal acts occurred. *Id.; see United States v. Anderson*, 328 U.S. 699, 703 (1946) ("[T]he *locus delicti*

must be determined" from "the location of the act or acts constituting" the "crime alleged"). Sometimes that inquiry points to a single district. *See, e.g.*, *United States v. Cabrales*, 524 U.S. 1, 6–7 (1998). Sometimes it points to more than one, because the proscribed acts happen in multiple locations. See, *e.g*., *Rodriguez-Moreno*, 526 U.S. at 281-82. But either way, the inquiry remains one into the place of the crime's conduct elements—the acts that the prosecution must prove to secure a conviction. *Abouammo*, 608 U.S. at 603.

The principles presented in *Abouammo* are not novel, however. In *United States v. Johnson*, 323 U.S. 273 (1944), the Court considered the place in which a prosecution brought under the Federal Denture Act should be tried. The now-defunct statute barred a person from "us[ing] the mails" "for the purpose of sending . . . into" a state any denture made by a non-dentist. *Id.* at 274. The Court held that venue was proper only where the product was put in the mail (Illinois), not where it was later received and used (Delaware). *Id.* In its reasoning, the Court explained that because "the crime of the sender is complete" when he drops the denture into the mailbox, that is where the trial had to take place. *Id.* It was immaterial that the illegal dentures in *Johnson* traveled on to Delaware—as it was that the false invoice in *Abouammo* reached California. *Id.* The relevant location for purposes of venue is where the actual criminal conduct taken by the defendant occurred. The same principle applies here.

**b. The Government failed to present a scintilla of evidence that any of the essential elements occurred in the Northern District of Texas.**

While the government has a lesser burden to prove venue, some evidence is still required to prove it by a preponderance. *United States v. Strain*, 396 F.3d 689, 693 (5th Cir. 2005) (citing *United States v. Anderson*, 328 U.S. 699, 705 (1946); Fed. R. Crim. P. 18). In this case, the Government relied on the fact that M.M.'s law firm, Steptoe Johnson, was in the Northern District of Texas. Steptoe Johnson was not named in the indictment. Besides this insignificant fact, the

government presented no evidence to show that any of the essential elements of the offense occurred in the Northern District of Texas. Indeed, M.M. testified that she lives in Collin County, in the Eastern District of Texas, and received the email while she was in Waco, in the Western District of Texas. And the second witness, J.H., testified that he was residing in Ohio when he received the communications from Peterson. No evidence was presented to show where Peterson sent the communications from.

As dictated by the Court's precedent, the venue question boils down to determining the conduct proscribed under Section 875(c). As the Government explained in its pre-trial filing, the primary question presented for the jury was the defendant's mental state when he transmitted each communication. Dkt. 73; *see Elonis v. United States*, 575 U.S. 723, 737-40 (2015); *Counterman v. Colorado*, 600 U.S. 66, 69, 79 (2023). The focus of the statute, and even the Government's argument, was that Peterson was guilty of recklessly sending true threats through interstate commerce. To complete this conduct, Peterson was only required to send the true threat; once that conduct was complete, he did not need to do any additional acts to be guilty under the statute. Again, the Government proves Peterson's point, as Section 875(c) criminalizes the interstate transmission of a threatening communication. The offense is therefore complete upon transmission with the required mental state. Dkt. 73; *See United States v. Kammersell*, 7 F. Supp. 2d 1196, 1199 (D. Utah 1998), *aff'd*, 196 F.3d 1137 (10th Cir. 1999).

Indeed, the conduct in Section 875(c) is similar to Section 1519, the statute that the defendant in *Abouammo* was charged with, in that nothing requires the communication of a threat to have an "impact" on the complainants. The statute is clear: A true threat must be made (by Peterson), and he must have intended it to be a threat. Whatever effects M.M. or J.H. or

even Steptoe Johnson may have endured do not constitute an element of the crime. *See, e.g., Abouammo*, 608 U.S. at 605 ("Section 1519 does not require that falsifying a document have any impact at all on an investigation—that it in fact obstruct or impede an investigation, present or future. (The statute thus differs from many federal laws barring actual obstruction. See, *e.g.*, 18 U.S.C. § 1512(c)(2).) So whatever obstructive effects Abouammo's false invoice may have had in northern California, they were not elements of his crime. And because that is so, those effects cannot figure in determining where Abouammo's 'crime [was] committed.'"). Using these principles, the government argued the same when stating "the key question for post-threat evidence is what the evidence is offered to prove… M.M.'s and J.H.'s reactions are offered as evidence of how a reasonable person, understood the charged threats…Those reactions bear on whether the communications would be understood by a reasonable person as true threats. They are not offered to prove Defendant's subjective mental state at the time the communications were transmitted". Dkt. 73. Seemingly, the Government agrees that the conduct described in section 875(c) is over once Peterson prepared and sent the communications.

Because the government failed to prove by a preponderance that venue was proper in the Northern District of Texas, this Court should grant relief on this basis.

**3. The government failed to prove the elements of the offense beyond a reasonable doubt.**

A post-trial motion for judgment of acquittal under Rule 29(c) "challenges the sufficiency of the evidence to convict." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998). In evaluating the merits of a motion for judgment of new trial or acquittal, the District Court is bound by the same principles that bind appellate courts. *See United States v. Sanchez*, 961 F.2d 1169, 1179 (5th Cir. 1992). The question is "whether, viewing the evidence in the light most favorable to the verdict, a rational [factfinder] could have found the essential elements of the

offense charged beyond a reasonable doubt." *United States v. Boyd*, 773 F.3d 637, 644 (5th Cir. 2014). Under this test, a reviewing court does not simply look at individual pieces of evidence; instead, it examines the evidence as a whole to determine if the government has proven the charges beyond a reasonable doubt. *See United States v. Schuchmann*, 84 F.3d 752, 753-54 (5th Cir. 1996). A district court therefore remains empowered to consider whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether the evidence is sufficient to establish every element of the crime. *United States v. Vargas-Ocampo*, 747 F.3d 299, 302 (5th Cir. 2014) (citing *United States v. Nevils,* 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc)).

In this case, the Government presented testimony through several witnesses: M.M., J.H., an employee from Steptoe Johnson, and an employee from Microsoft. First, M.M. and J.H. both testified to receiving emails on June 23, 2023, concerning the indicted language. However, M.M. and J.H. testified that they communicated with Peterson in April and May of 2023. In these emails, Peterson exhibited aggressive language after being served with a lawsuit prepared by M.M. on behalf of J.H., such as "I will break your legs," "I am going to Academy and getting the heaviest baseball bat they sell," and "I am going to sue both of you into personal bankruptcy, All that I do is sue people and now you and Dave are my Number One targets, GO FUCK YOURSELVES!!!!, I AM GOING TO WIPE BOTH OF YOU OFF OF THE FACE OF THE EARTH."

M.M. further testified to emailing and speaking with Peterson on the phone after June 2023, and that Peterson did not state anything "threatening." This constant engagement with Peterson without any complaint, proves that his communications were not true threats, nor did he ever believe the recipients would receive them as true threats. Peterson was speaking in terms of litigation. His reputation and company were under fire, and he reacted inappropriately, but his

language is protected under the First Amendment. *See Watts v. United States*, 394 U.S. 705 (1969). For example, in *Watts*, a young Vietnam War protester stated to a small crowd, “If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.” *Id.* at 706. The Supreme Court held that the context demonstrated that the statement was “political hyperbole”—in other words, a “very crude offensive method of stating a political opposition to the President.” *Id.* at 708. The statement was made “during a political debate,” was “expressly made conditional upon an event—induction into the Armed Forces—which [Watts] vowed would never occur,” and “both [Watts] and the crowd laughed after the statement was made.” *Id.* at 707. The language used in this case was similar hyperbole in the context of civil litigation.

For Peterson’s email communications in Counts 2 through 5, 7, and 8, and in light of the two counts the jury found him not guilty and his documented history of using coarse and hyperbolic language in prior emails, the Government failed to prove his communications constituted a true threat. The jury was correct in finding that the language used in Counts 1 and 6 was so far-fetched that no person would believe those to be true. The trial testimony and exhibits, including Peterson’s apology, proved his speech was no more than hyperbole. Again, while crude, his language in terms of competition or a lawsuit was vague and acceptable. *See United States v. O’Dwyer*, 443 Fed. App’x 18 (5th Cir. 2011).

The testimony of M.M. in the surrounding context is not credible. In April and May of 2023, M.M. was aware of Peterson’s disgruntled behavior regarding the lawsuit. Even after June, she had contact with Peterson, testified in another hearing that she wanted this behind her, believed in second chances, and even needed Peterson to help her clients get insurance money. In the context of the lawsuit and her experience with Peterson, it does not lead a reasonable person to believe that Peterson had a genuine intent to commit sodomy. J.H.’s testimony was no

better. J.H. testified he didn't really do anything after Peterson's emails. He had known Peterson since 2017 and was aware of his personality and aggressive behavior. In business, it benefited him. He did not testify that he believed Peterson would commit sodomy against him. J.H. needed Peterson involved with the litigation to get paid, and he testified on direct that his main concern was getting his money back. Therefore, Peterson's emails did not contain "true threats", nor did he subjectively intend them to be threatening.

Ultimately, the Government failed to meet its burden in this case. The witness from Microsoft only testified that Peterson's email traveled through Illinois. She did not testify, nor did anyone, to Peterson's knowledge of whether he knew the email would travel in interstate commerce. Based upon all of Peterson's arguments, this Court should grant an acquittal.

**4. Should this Court deny Defendant's motion for a Judgment of Acquittal, then Defendant's Motion for a New Trial should be granted.**

Pursuant to Fed. R. Crim. P. Rule 33(b)(2), a Motion for New Trial is to be filed no later than fourteen days after a guilty verdict. Grounds for a new trial are enumerated by statute. Rule 33 of the Federal Rules of Criminal Procedure authorizes the court to grant a new trial on Defendant's motion if the interest of justice requires. It envisions two rationales for a motion for new trial: "newly discovered evidence" and "other grounds." Although "other grounds" encompasses a vast quantity of rationales, simply stated, if a motion for a new trial is timely filed, it may be "grounded on any reason for which a new trial could be granted and was not required to be limited to newly discovered evidence." *United States v. Scroggins,* 370 F.3d 233, 253-254 (5th Cir. 2004), *vacated on other grounds,* 543 U.S. 1112 (2005). A new trial should be granted on two grounds: in the interest of justice and because the jury was instructed on improper law regarding venue.

**5. Conclusion**

The government's evidence in this case has failed to satisfy every element of both counts beyond a reasonable doubt. In this case, for this Defendant, Rule 29(c) is not only appropriate and just, but it is required. For all the reasons set forth above, Peterson respectfully requests that this Court grant this motion and enter a judgment of acquittal for all Counts of the Indictment and contingently moves pursuant to Federal Rule of Criminal Procedure 29(d) for a new trial.

Respectfully submitted,

/s/ J. Joseph Mongaras, Jr.
J. Joseph Mongaras, Jr.
Texas Bar No. 24039975
jjm@udashenanton.com

Udashen | Anton
8150 N. Central Expressway
Suite 1265
Dallas, Texas 75206
(214) 468-8100
(214) 468-8104 (fax)

*Attorney for Peterson*

**CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with the U.S. Attorney's Office, who represented that they are opposed.

*/s/ J. Joseph Mongaras*
J. Joseph Mongaras

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2026, I electronically filed this document and it was served on all counsel via this Court's ECF system.

*/s/ J. Joseph Mongaras*
J. Joseph Mongaras